shall be paid to the stockholders. and does not provide for the payment back to them of surplus money collected in enforcement of their individual liability. If it were necessary. the money collected from stockholders might fairly be considered as the proceeds of assets of. the bank. for the purposes of the statute; but, at all events, as the statute provides that the money to be made by enforcing the liability of stockholders is to be paid to the treasurer, subject to the order of the comptroller, and that the comptroller is to make dividends of such money and other money, and that the remainder of the proceeds, after paying the debts. shall be paid to the shareholders, it is entirely clear that such proceeds include surplus money collected from stockholders.

It is not necessary now to anticipate or decide any question in regard to a second assessment. No considerations growing out of the same properly affect any question arising on this demurrer.

The cases of Kennedy v. Gibson and Sanger v. Upton decide that the comptroller is vested with authority to determine the extent to which the individual liability of stockholders is to be enforced. This decision was followed by the district court for the Eastern district of New York, in Strong v. Southworth [Case No. 13,545].

The complaint alleges, that the assets of the bank are insufficient to pay "its debts and liabilities," and that, in order to provide for paying the same, it is necessary to enforce the personal liability of the stockholders; and that the comptroller has determined that such assets are insufficient to pay such "debts and liabilities," and that it is necessary, in order to pay "the same," to enforce to the extent named in the complaint the individual liability of the stockholders. The criticism is made, that the liability imposed by the statute is for all "contracts, debts and engagements" of the bank, and that the statute (section 5234) provides that such individual liability may be enforced only where is it "necessary to pay the debts" of the bank, and not for the purpose of paying "liabilities of the bank." It is a sufficient answer to this criticism to say, that the complaint, after the foregoing averments, goes on to set out in hæc verba the determination or assessment made by the comptroller, and that, in that, it is stated that he determines that the assessment is necessary to pay the duly proven debts of the bank. Moreover. there could have been no intention, by the language of section 5234, "to pay the debts," to narrow the individual liability imposed by section 5151, which is for all "contracts, debts and engagements," and the word "liabilities" imports no broader meaning that the word "debts" in section 5234, when the word "debts" in that section must necessarily be held to include the "contracts, debts and engagements" mentioned in section 5151.

The demurrer is overruled, with costs, with leave to the defendant to answer in 20 days, on payment of costs.

---

## Case No. 13,300.
### STANWOOD v. FORDYCE.
[See Case No. 15,130.]

---

## Case No. 13,301.
### STANWOOD v. GREEN.

[2 Abb. (U. S.) 184; [1] 11 Int. Rev. Rec. 134; 3 Am. Law T. Rep. U. S. Cts. 133; 17 Pittsb. Leg. J. 153; 2 Leg. Gaz. 302.]

District Court, S. D. Mississippi. June, 1870.

INTERNAL REVENUE—POWERS OF SUPERVISORS.

1. A supervisor of internal revenue is entitled, under the provisions of the internal revenue act of July 20, 1868, § 49 (15 Stat. 144), to examine the books and papers belonging to banks. bankers. brokers, and banking associations. and is not bound to inform the owners of his purpose in making such examination.

2. Where a summons for the production of books has been issued by the supervisor of internal revenue, and such summons has been duly executed. but not complied with, a United States district judge may, upon application, and proof of these facts. issue a writ of attachment.

3. Section 49 of the act of July 20, 1868 (15 Stat. 144), which gives supervisors of internal revenue the right to examine such books and papers as show the operation of banks, &c., with the public, ·and are connected with the internal revenue of the United States,—is not unconstitutional. either as purporting to authorize an unreasonable seizure and search, or as compelling a party to testify against himself.

[Cited in Re Platt, Case No. 11,212; U. S. v. Three Tons of Coal, Id. 16,515.]

Motion to quash an attachment.

HILL, District Judge. The questions now presented arise upon the following proceedings:

The applicant being the supervisor of internal revenue for the states of Alabama and Mississippi. called at the banking house of Messrs. J. & T. Green, and requested to see the checks received by them as such bankers on the previous day. which the Messrs. Green refused to exhibit; insisting that the supervisor, under the acts of congress, possesses no such right; and that, were such the provision of the act, it would be in violation of the constitution of the United States, and of no effect; whereupon the supervisor issued his summons directed to the Messrs. Green, requiring them to produce before him, at his office in Jackson, all books of accounts and papers containing entries of accounts between the banking house of said J. & T. Green and all other persons; which summons was duly executed, but which was not complied with. Whereupon application was made to me for a writ of attachment to com-

[1] [Reported by Benjamin Vaughan Abbott, Esq., and here reprinted by permission.]